UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MELISSA SQUIRES, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16 CV 2046 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Melissa Squires brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Squires' severe physical and mental impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded to the Commissioner.

### I. Procedural History

Squires filed an application for DIB on June 24, 2015, claiming that she became unable to

work on November 10, 2011,[1] because of depression, post-traumatic stress disorder ("PTSD"), arthritis, lower back pain, hip pain, shoulder impingement, bilateral foot pain, ankle pain, joint pain, and fibromyalgia. (Tr. 271.) Squires was 44 years of age on her alleged onset of disability date. *Id.* Her claims were denied initially. (Tr. 126-34.) Following an administrative hearing, Squires' claim was denied in a written opinion by an ALJ, dated July 18, 2016. (Tr. 11-26.) Squires then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on November 2, 2016. (Tr. 7, 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Squires first argues that the "basis for the RFC is unclear and it is not supported by substantial evidence." (Doc. 21 at 4.) She next claims that the ALJ "erroneously afforded Dr. Ghosh's opinion 'little' weight." *Id.* at 8. Finally, Squires argues that the ALJ "failed to make a proper credibility determination." *Id.* at 21.

## II. The ALJ's Determination

The ALJ first noted that Squires meets the insured status requirements of the Social Security Act through March 31, 2020, and has not engaged in substantial gainful activity since January 1, 2014, her amended alleged onset date. (Tr. 13.)

In addition, the ALJ concluded that Squires had the following severe impairments: degenerative disc disease; right shoulder impingement; fracture and reconstruction of the left distal radial ulnar joint; left ankle anterior talofibular ligament tear; asthma; obesity; depression; anxiety; and PTSD. *Id.* The ALJ found that Squires did not have an impairment or combination

---

[1]Squires subsequently amended her alleged onset date of disability to January 1, 2014. (Tr. 11.)

of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15.)

As to Squires' RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) in that she can perform occasional lifting up to 10 pounds and the frequent lifting/carrying less than 10 pounds; standing or walking 2 hours out of an 8 hour workday and sitting 6 hours out of an 8 hour workday. In addition, she requires a sit/stand option allowing a change in position every 30 minutes for a few minutes a time while remaining at the workstation. She can never climb on ladders, ropes, or scaffolds. She can no more than occasionally climb on ramps and stairs. She can no more than frequently stoop, kneel, crouch, or crawl. Overhead reaching is limited to frequent. Handling is limited to frequent. She should avoid even moderate exposure to vibration, wetness, humidity, and pulmonary irritants, such as gas, fumes, odors, dusts, and workspace with poor ventilation. She should avoid concentrated exposure to work hazards, such as unprotected heights and being around dangerous, moving machinery. She [is] able to understand, remember, and carry out simple to moderately complex instructions consistent with semi-skilled work. She can tolerate occasional interaction with coworkers and supervisors. She can have no contact with the general public.

(Tr. 18.)

The ALJ found that Squires' allegations regarding the extent of her limitations were not entirely credible. (Tr. 19.) In determining Squires' RFC, the ALJ indicated that she was assigning "little weight" to the opinions of treating rheumatologist Sanjay Ghosh, M.D. (Tr. 22.)

The ALJ further found that Squires was unable to perform past relevant work, but was capable of performing other jobs existing in the national economy, such as addresser and document preparer. (Tr. 24-25.) The ALJ therefore concluded that Squires was not under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of the

decision. (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 24, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 26.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and

> non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."

*Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other

work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based

Page **8** of **18**

on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As set out above, Squires argues that the ALJ erred in determining her RFC, weighing the opinion of Dr. Ghosh, and assessing the credibility of Squires' subjective complaints. Squires' claims will be discussed in turn, beginning with the ALJ's credibility analysis.

**A.** <u>**Credibility**</u>

Before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In so doing, the ALJ must consider all evidence relating to the claimant's subjective complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing her reasons for discrediting the testimony. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). "It is not enough that inconsistencies may be said to exist, the ALJ must

set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations." *Cline*, 939 F.2d at 565; *see also Renstrom,* 680 F.3d at 1066; *Beckley v. Apfel*, 152 F.3d 1056, 1059-60 (8th Cir. 1998). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001); *see also Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. *Tellez,* 403 F.3d at 957; *Pearsall*, 274 F.3d at 1218.

Squires argues that the ALJ in the instant case did not make a credibility determination at all, "and certainly failed to discuss the reasons for not finding claimant credible." (Doc. 21 at 12.) She contends that the ALJ did not discuss any inconsistencies nor did she discuss the *Polaski* factors.

The ALJ made the following finding:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 19.) Although the ALJ did not explicitly cite or discuss the *Polaski* factors, she did point out three perceived inconsistencies between Squires' allegations and the evidence of record.

First, the ALJ discussed Squires' daily activities. The ALJ stated that, in spite of Squires' physical limitations, she "admitted that she is able to help prepare meals for her family," enjoys working puzzles and watching sports, and made plans to take her son to a football game in July 2014. (Tr. 19.) The ALJ found that Squires' "participation in activities that require good concentration is inconsistent with her allegations of significant limitations." *Id.*

The ALJ next found that the objective medical evidence was inconsistent with Squires'

subjective allegations. (Tr. 19.) She stated that, "[a]lthough the claimant's medical record is vast, it contains few objective findings to support significant limitations after her amended onset date." *Id.*

The undersigned finds that the credibility analysis undertaken by the ALJ is deficient and lacks the support of substantial evidence. First, the record contradicts the ALJ's finding that the medical evidence contains few objective findings to support significant limitations. The ALJ's own summary of the medical evidence belies this finding. As noted by the ALJ, the medical evidence in this case is vast. Squires alleges disability primarily due to back, neck, and shoulder pain resulting from injuries she sustained in 2011 while on active duty with the United States Army.[2] A summary of the relevant objective evidence discussed by the ALJ is provided below.

In April 2014, physical examination findings revealed that Squires appeared to be in pain, walked with an antalgic gait, and had difficulty sitting. (Tr. 20, 1016, 1020.) Squires also exhibited signs of edema, muscle spasm, and limited range of motion in her cervical spine and lumbar spine. *Id.* She received multiple steroid injections in her cervical spine the summer of 2014 to relieve pain related to cervical radiculopathy. (Tr. 20, 1312-1320.)

In September 2014, Squires consulted with spine specialist Terrence L. Piper, M.D., regarding neck surgery. (Tr. 20, 1321.) Upon physical examination, Dr. Piper noted positive signs of shoulder impingement, and positive abduction and external rotation sign. *Id.* He stated that Squires has components both of a shoulder and a neck problem. *Id.* Imaging of the cervical spine revealed multilevel degenerative changes with central canal, neural foraminal narrowing, and nerve encroachment. (Tr. 20, 1338.) Based on these findings, Dr. Piper recommended neck

---

[2]Squires also alleged disability based on mental impairments, and the ALJ found that her depression, anxiety, and PTSD were severe impairments. Because Squires does not challenge the ALJ's findings with regard to her mental limitations, the undersigned will limit the discussion in the instant Memorandum to Squires' physical impairments.

surgery.   (Tr. 20, 1326.)

Diagnostic imaging of Squires' right shoulder revealed early acromioclavicular degenerative joint disease, as well as signs of impingement and edema.   (Tr. 21, 1339-42.)

The ALJ stated that physical examinations performed by rheumatologist Sanjay Ghosh, M.D. in 2014 and 2015 revealed trace swelling and tenderness in Squires' wrists, fingers, ankles, knees, shoulders, and hips; and notes from 2016 revealed tenderness in the low back.   (Tr. 21, 2530, 2729, 2736, 2740.)

In September 2015, primary care physician Aubra A. Houchin, D.O., noted on examination that Squires walked stiffly, slowly, and with a limp; had difficulty getting up from a chair; had tenderness in her low back; and had restricted range of motion in her right shoulder by 25 percent. (Tr. 21, 2712.)

The ALJ noted that MRIs of the lumbar and cervical sections of Squire's spine in May 2016 revealed "mild" degenerative changes.   (Tr. 21, 2959-2962.)   This imaging also revealed mild canal narrowing at C3-4, C5-6, and C6-7 secondary to the degenerative changes, foraminal narrowing at C4-5, C5-6, and C6-7 (Tr. 2962); and mild bilateral neuroforaminal stenosis at L3-L4 and L4-L5, and a disc bulge at L4-L5 (Tr. 2960.)   Physical examinations Squires underwent in May 2016 revealed limited range of motion of the neck and shoulders, as well as a positive Spurling's sign[3] on the right side.   (Tr. 21, 2885.)

Squires has a history of fracture and reconstruction of the left wrist in 2013.   (Tr. 21, 376,

---

[3]The Spurling test is an evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain.  *Stedman's Medical Dictionary* 1729 (27th ed. 2000).

1092.)  A recent examination in May 2016 reflected continued instability in her left wrist.  (Tr. 21, 2767.)

Squires also underwent a surgical repair of a left ankle ligament tear in January 2014.  (Tr. 21, 1008, 1092.)  Treatment notes from May 2015 reflected that Squires had residual pain in her foot and ankle with some difficulty walking.  (Tr. 21, 2108.)  Additionally, physical examination findings from one year later revealed crepitation and instability in this ankle.  (Tr. 21, 2882.)

The objective medical evidence discussed above, shows objective findings were consistently noted on examination and on imaging with regard to Squires' multiple musculoskeletal impairments.  For example, the following objective findings are supportive of Squires' allegations of limitations: antalgic gait, edema, muscle spasm, limited range of motion, signs of shoulder impingement, swelling, limp, difficulty getting up, difficulty walking, positive Spurling's sign, instability in the left wrist, crepitation and instability in the left ankle, and narrowing of the spine on MRI.  The ALJ's statement that the record contained "few objective findings to support significant limitations after her amended onset date" is not supported by the record or even the ALJ's summary of the medical evidence.  The ALJ, therefore, erred in finding Squires' subjective complaints not credible on this basis.

The ALJ next discussed Squires' daily activities.  She found that Squires' actions of helping prepare meals for her family, working puzzles, watching sports, and making plans to take her son to a football game were inconsistent with her allegations of disability.  (Tr. 19.)  A claimant's ability to engage in personal activities does not generally constitute substantial evidence that she has the functional capacity to engage in SGA.  *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007).  But a claimant's daily activities may undermine her credibility. *See, e.g., Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for

the ALJ to note that Harris's daily activities, including part-time work, cleaning house, attending church, and dining out with her boyfriend, were inconsistent with her claim of disabling pain."). The ALJ cited a September 3, 2015 reference in treatment notes that Squires reported that she and her husband planned to take their son to a football game on August 30, 2015. (Tr. 1491.) While this level of activity would appear inconsistent with her subjective allegations, the undersigned notes that there is no indication in the record that Squires did in fact take her son to the game. Overall, Squires' reported daily activities are not inconsistent with her subjective allegations.

Finally, the ALJ stated that Squires "complained of pain over her whole body; yet, she admitted that she had not taken any medications to relieve her pain on the day of the hearing." *Id.* At the hearing, Squires testified that she takes Dilaudid[4] for pain, but it causes her to experience drowsiness. (Tr. 63.) She stated: "I didn't take it today so I could be—so I could interact with the Judge and that's probably why I'm having so much pain right now." (Tr. 63-64.) Squires testified that she can take the Dilaudid every four hours as needed, and that she had been taking it at least three times a day. (Tr. 65.) The ALJ did not include any of this testimony in her opinion. An ALJ is required to consider medication side effects in the credibility analysis. *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

Further, consistent with Squires' testimony, the ALJ stated that she had observed Squires "constantly moving from sitting to standing, and it appeared that she had difficulty finding a comfortable position." (Tr. 19.) The hearing transcript also reveals that Squires laid down on the floor twice during the hearing before the ALJ. (Tr. 87, 100.) Thus, the fact that that Squires opted not to take one dosage of a strong narcotic pain medication that causes drowsiness prior to the hearing so that she could interact with the ALJ does not detract from her credibility. There is

---

[4]Dilaudid is an opioid (narcotic) analgesic indicated for the treating of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited March 12, 2018).

no indication in the medical record that Squires was noncompliant with her prescribed medications.

Where alleged inconsistencies upon which an ALJ relies to discredit a claimant's subjective complaints are not supported by and indeed are contrary to the record, the ALJ's ultimate conclusion that the claimant's symptoms are less severe than she claims is undermined. *Baumgarten v. Chater,* 75 F.3d 366, 368-69 (8th Cir. 1996).

The ALJ also failed to acknowledge Squires' positive work history, consisting of twenty-seven years of service in the Army. (Tr. 44.) This factor, along with the objective medical evidence, the ALJ's observations of Squires' behavior during the hearing, and Squires' use of strong pain medication, all support her credibility.

In light of the above, it cannot be said that the ALJ demonstrated in her written decision that she considered all of the evidence relevant to Squires' complaints or that the evidence she considered so contradicted Squires' subjective complaints that her testimony could be discounted as not credible. *Masterson v. Barnhart*, 363 F.3d at 731,738-39 (8th Cir. 2004); *Baumgarten*, 75 F.3d at 370. As such, the ALJ's adverse credibility determination is not supported by substantial evidence on the record as a whole. Because the ALJ's decision fails to demonstrate that she considered all of the evidence before her under the standards set out in *Polaski*, this cause should be remanded to the Commissioner for an appropriate analysis of plaintiff's credibility.

**B.     Dr. Ghosh's Opinion**

Upon concluding that Squires' subjective complaints were not credible, the ALJ turned to the medical opinion evidence. The ALJ accorded the opinion of treating rheumatologist Dr. Ghosh "little weight."

"'It is the ALJ's function to resolve conflicts among the various treating and examining

physicians.'" *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). Opinions from medical sources who have treated a claimant typically receive more weight than opinions from one-time examiners or non-examining sources. *See* 20 C.F.R. § 416.927(c)(1)-(2). However, the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. *See Casey*, 503 F.3d at 692.

If an ALJ declines to ascribe controlling weight to the treating physician's opinion, she must consider several factors in determining the appropriate weight for that source's medical opinion, including: 1) length and frequency of the treatment relationship; 2) nature and extent of the treatment relationship; 3) evidence provided by the source in support of the opinion ("supportability"); 4) consistency of the opinion with the record as a whole; and 5) the source's level of specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c).

Dr. Ghosh completed a "Fibromyalgia/Arthritis Residual Functional Capacity Questionnaire" on June 2, 2016. (Tr. 2754-2758.) Dr. Ghosh expressed the opinion that Squires could walk less than one city block without rest or severe pain; sit for 15 to 20 minutes; stand for no more than 5 minutes; sit for less than 2 hours in an 8-hour workday; stand or walk for less than 2 hours in an 8-hour workday; requires a job that permits shifting positions at will from sitting, standing, or walking; requires unscheduled breaks; can never lift and carry any amount of weight in a competitive work situation; has significant limitations in doing repetitive reaching, handling, or fingering; and was likely to be absent from work more than four days per month as a result of her impairments or treatment. (Tr. 2756-58.) The ALJ stated that Dr. Ghosh's opinion "is not consistent with his progress notes that reflect mostly normal exams with little more than joint tenderness, which casts doubt on the overall reliability of his findings." (Tr. 22.)

Dr. Ghosh frequently noted tenderness and trace swelling in the fingers, wrists, and shoulders (Tr. 2333, 2337, 2342, 2345, 2367); trace swelling in the ankles, knees, and shoulders (Tr. 2337, 2342, 2357); and tenderness in the cervical and lumbar spine (Tr. 2345, 2349, 2362, 2726, 2729, 2733, 2736, 2740, 2357, 2362, 2367) on physical examinations. Dr. Ghosh indicated that he had been treating Squires since June 2014 for fibromyalgia, spinal stenosis, and spondylolisthesis. (Tr. 2754.) He described her prognosis as "poor." *Id.* When asked to identify the clinical findings or test results that show Squires' impairments, Dr. Ghosh cited the 2016 MRI of the lumbar spine. *Id.* He indicated that Squires has the following symptoms: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, depression, tenderness, abnormal gait, hypothyroidism, and weight change. (Tr. 2754-55.)

To the extent the ALJ discounted Dr. Ghosh's opinion inasmuch as his treatment notes "reflect mostly normal exams. . ." (Tr. 22), "[i]t does not seem unusual that a physician would see no need to make specific treatment notes on an unemployed patient's need for work [restrictions] during a routine medical examination." *Leckenby v. Astrue*, 487 F.3d 626, 633 n.7 (8th Cir. 2007). This is especially true here where Squires' medical records with Dr. Ghosh are replete with consistent complaints of chronic pain despite multiple years of treatment with strong pain medication, injections, surgeries, physical therapy, and chiropractic treatment. *See id.* at 633. In addition, the May 2016 MRI of the lumbar spine to which Dr. Ghosh referred revealed degenerative changes as well as bilateral neuroforaminal stenosis at L3-L4 and L4-L5; a disc bulge at L4-L5 that had worsened slightly since the previous study; and new, mild narrowing of the right lateral recess, affecting the traversing right L5 nerve root. (Tr. 2960.) It cannot be said therefore, that the limitations found by Dr. Ghosh find no support in his treatment notes or other evidence of record. *Id.*

C.  **RFC Assessment**

Squires argues that the ALJ's RFC determination failed to include limitations for her wrist, ankle, and neck impairments, all of which require additional surgery; her right shoulder impairment; and the pain resulting from her combination of impairments.

Because "[s]ubjective complaints . . . are often central to a determination of a claimant's RFC," *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004), an ALJ's RFC assessment based on a faulty credibility determination is called into question because it does not include all of the claimant's limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001). This is especially true in the instant case, where the ALJ's credibility assessment was based in large part on a mischaracterization of the objective medical evidence.

In addition, given the ALJ's improper determination to discount the opinion of treating physician Dr. Ghosh, it cannot be said that the resulting RFC assessment is supported by substantial evidence on the record as a whole. *See generally Leckenby*, 487 F.3d at 635.

## VII.  Conclusion

The ALJ erred in evaluating Squires' credibility and in analyzing the opinion evidence of record in this case, resulting in an RFC determination that was not supported by substantial evidence on the record as a whole. The matter will, therefore, be remanded for further consideration.

/s/ Abbie Crites-Leoni<br>
ABBIE CRITES-LEONI<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2018.